UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSICA COHEN

                                                 **Plaintiff,**         **VERIFIED**
                                                                 **COMPLAINT**

      -against-

                                                                  **DOCKET NO.:**

**SUFFOLK COUNTY and/or SUFFOLK COUNTY**
**DEPARTMENT OF SOCIAL SERVICES,**              **JURY TRIAL**
**JOHN O'NEILL, in his official capacity as**        **DEMANDED**
**Commissioner of the Suffolk County Department of**
**Social Services, SUFFOLK COUNTY ASSOCIATION**
**OF MUNICIPAL EMPLOYEES, INC., KEVIN**
**WILLIAMS, individually and in his official**
**capacity as Third Vice President of Suffolk County**
**Association of Municipal Employees, Inc.**

                                           **Defendants.**
------------------------------------------------------------------X

        Plaintiff, JESSICA COHEN, by her attorneys, Guercio & Guercio LLP, complaining of

Defendants SUFFOLK COUNTY and/or SUFFOLK COUNTY DEPARTMENT OF SOCIAL

SERVICES, JOHN O'NEILL, in his official capacity as Commissioner of the Suffolk County

Department of Social Services, SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL

EMPLOYEES, INC. ("AME" or "Union"), and KEVIN WILLIAMS, individually and in his

official capacity as a Third Vice President of Suffolk County Association of Municipal Employees,

alleges upon knowledge as to herself and her own actions and upon information and belief as to

all other matters as follows:

<u>**Nature of Action**</u>

        1.      This is a civil action seeking monetary damages to remedy discrimination in public

employment, redress violations and deprivation of rights secured by Plaintiff under Title VII of

the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. Section 2000 *et seq.*, and the Civil

Rights Act of 1991 for employment discrimination on the basis of gender, race, color, sex, and/or age. Further, this action is based upon Defendants' failure to take reasonable measures to prevent discrimination because of Plaintiff's gender, race, color, sex, and/or age and in retaliation for Plaintiff engaging in protected activity, all in violation of 42 U.S.C. §§ 1983.

2.      This action also arises under the laws of the State of New York for Intentional Infliction of Emotional Distress and any other cause(s) of action that can be inferred from the facts set forth herein.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this claim under 28 U.S.C. Sections 1331, 1343 and 1367(a) and 42 U.S.C. Section 2000e-5.  The Court has supplemental jurisdiction over the state claims of Intentional Infliction of Emotional Distress based upon the same operative facts as the discrimination asserted herein.  In the interest of judicial economy, convenience and fairness to the parties herein, this Court exercises pendent jurisdiction of the claims arising under the Laws of the State of New York.

4.      The wrongful acts alleged herein occurred at Plaintiff's place of employment located in the County of Suffolk, State of New York within the territorial jurisdiction of this District Court.  Suffolk County owned, operated, and maintained the Mary Gordon Building located at 30-85 Veterans Memorial Highway, Ronkonkoma, New York 11779, and/or in the Great River Building located at 3500 Sunrise Highway, Great River, New York 11739 on the dates set forth below. Plaintiff resides in Suffolk, NY. Venue is therefore proper under 28 U.S.C. Section 1391.

**Procedural Requirements**

5.      All jurisdictional conditions precedent to maintaining this action have been fulfilled.

6.      On January 20, 2016 Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 520-2016-01170 against Defendant SUFFOLK COUNTY and/or SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES and Charge No. 520-2016-01306 against Defendant SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC. alleging Defendants intentionally treated her differently from other employees because of her race, national origin, sex, and/or age and retaliated against Plaintiff for filing a workplace violence and/or discrimination complaint.

7.      By letter dated January 27, 2017, the EEOC issued a Notice of Right to Sue letter in connection with the above-referenced EEOC Charges, attached hereto.

8.      Plaintiff filed the instant matter timely within 90 days of receiving the Notice of Right to Sue Letter from the EEOC.

**Parties**

9.      Plaintiff JESSICA COHEN is a citizen of the United States and a resident of the County of Suffolk, State of New York.

10.     At all times herein mentioned, JESSICA COHEN, was a Social Service Examiner and was continuously employed by Defendant SUFFOLK COUNTY and/or SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES in that capacity since in or about 2003.

11.     Defendant, SUFFOLK COUNTY is, and at all times herein a municipality located within the State of New York, with offices located at H. Lee Dennison Bldg. 100 Veterans Memorial Highway, Hauppauge, New York 11788.

12.     Defendant, SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES is, and at all times herein, a department/division of a municipality, located within the State of New York, with offices located at 3085 Veterans Memorial Highway, Ronkonkoma, New York, 11779.

13.     Upon information and belief, Defendant, SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC. is a not for profit corporation located within the State of New York, with its office located at 30 Orville Drive, Suite A, Bohemia, New York 11716. Said Defendant provides union representation to employees of Defendant SUFFOLK COUNTY, including Plaintiff. Upon information and belief, the eight-member Executive Board comprised of the President, Executive Vice President, First, Second, Third and Fourth Vice Presidents, Treasurer, and Secretary, is responsible for the day to day operation of the Association.

14.     Defendant, JOHN O'NEILL, is the Commissioner of the Suffolk County Department of Social Services. Said Defendant is the chief administrative officer of the Department, has the power and authority to create and implement a wide array of policies for staff members, and is a state actor with his office located at 3085 Veterans Memorial Highway, Ronkonkoma, New York, 11779.

15.     At all times relevant, Defendant, KEVIN WILLIAMS, was an individual employed by Defendant, SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES. Said Defendant was and/or is a member of Defendant, SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC. ("AME" or "Union") and elected to the Executive Board in 2012 as Third Vice President of Defendant, AME. Upon information and belief, said Defendant served as Third Vice President until on or about June 30, 2015. At all times mentioned, said Defendant acted within the course and scope of his employment and under the supervision of SUFFOLK COUNTY and/or

AME. At all times relevant, said Defendant was assigned as a union representative for employees of SUFFOLK COUNTY under Plaintiff's supervision, who are represented by AME Union.

## Factual Background

16.     At all times relevant, Plaintiff JESSICA COHEN was a female, Caucasian employee of Defendant SUFFOLK COUNTY and/or SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES (hereinafter collectively referred to as "SUFFOLK COUNTY").

17.     At all times relevant, Plaintiff was employed by SUFFOLK COUNTY as a Social Services Examiner IV and an Assistant Center Manager in the MSD- Chronic Care Department.

18.     As a Social Services Examiner IV and an Assistant Center Manager in the MSD-Chronic Care Department, Plaintiff was responsible to supervise and oversee the productivity of certain employees and hold weekly productivity meetings regarding same, among other duties.

19.     Defendant SUFFOLK COUNTY is an employer within the meaning of 42 U.S.C. Section 2000e (b). 29 U.S.C. § 630(b), and 42 U.S.C. § 2000e (g) (h).

20.     Defendant SUFFOLK COUNTY is engaged in commerce within the meaning of 42 U.S.C. Section 2000e (g).

21.     At all times relevant, Plaintiff was a member of Defendant SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC., ("AME" or "Union") the Union which represents employees of SUFFOLK COUNTY.

22.     At all times relevant, Defendant KEVIN WILLIAMS is a male, African American who was an employee of SUFFOLK COUNTY, as a Social Examiner II.

23.     At all times relevant, Defendant WILLIAMS was also a member of Defendant AME, the Union who represents employees of SUFFOLK COUNTY, including Plaintiff, and held the title of Third Vice President for AME Union and served as an AME representative.

24.     At all times relevant, WILLIAMS, an AME Union Member and Third Vice President, was assigned as a union representative for employees of SUFFOLK COUNTY under Plaintiffs' supervision, who are represented by AME Union and are supervised by Plaintiff.

25.     The violations committed by Defendants, discussed in detail below, began in or about November 2014 and are continuing violations of Title VII of the Civil Rights Act.

**Work History / Background**

26.     Plaintiff began working as a Social Services Examiner for SUFFOLK COUNTY in or about 2003.  Until in or about September of 2016, Plaintiff held the position of Social Services Examiner IV and was an Assistant Center Manager in the MSD- Chronic Care Department.  In this position, Plaintiff was responsible to supervise and oversee the productivity of certain employees and hold weekly productivity meetings regarding same, among other duties.

27.     In or about September of 2016, Plaintiff was transferred by SUFFOLK COUNTY as a Social Services Examiner IV in MA Administration.  Plaintiff currently holds this position.

28.     Plaintiff's responsibilities to supervise and manage certain employees was removed when Plaintiff was transferred to the position of Social Services Examiner IV in MA Administration.

29.     The relevant incidents occurred at Plaintiff's place of employment with SUFFOLK COUNTY, in the Mary Gordon Building located at 30-85 Veterans Memorial Highway, Ronkonkoma, New York 11779, and/or in the Great River Building located at 3500 Sunrise Highway, Great River, New York 11739 on the dates set forth below.

30.     At all times relevant, Defendant WILLIAMS, was an individual employed by SUFFOLK COUNTY and Third Vice President for AME and at all times mentioned acting within

the course and scope of his employment and under the supervision of SUFFOLK COUNTY and/or AME.

31.     At all times relevant, Defendant WILLIAMS was assigned and did not work in either the Mary Gordon Building or the Great River Building, where Plaintiff works.

32.     Pursuant to WILLIAMS position as an assigned union representative, WILLIAMS would report to Plaintiff's place of employment to accompany employees who had requested union representation during certain meetings when they were eligible for Union representation.

33.     WILLIAMS is only permitted access to Plaintiff's place of employment when he is scheduled to appear to provide representation to an employee of SUFFOLK COUNTY on behalf of the Union.

34.     WILLIAMS abused his position as a Union representative and routinely overstepped his authority in harassing and/or discriminating against Plaintiff.

35.     WILLIAMS used his position as a Union representative as a ruse to repeatedly harass Plaintiff.

36.     Plaintiff has previously complained to SUFFOLK COUNTY about WILLIAMS' harassing and/or discriminatory behavior committed while he was acting as a Union representative.

37.     As a result of previous complaints regarding WILLIAMS' harassing and discriminatory behavior, WILLIAMS' was only permitted in and around the buildings if and/when he is assigned to provide union representation on behalf of AME Union to a SUFFOLK COUNTY employee and only for the duration of time required to conduct such meeting.

38.     WILLIAMS is not permitted access into and around the Plaintiff's place of employment, including but not limited to, the Mary Gordon building and the Great River building, unless and until he has received permission from SUFFOLK COUNTY employee, Kimberly Staab

("Staab"), Division Administrator of Medicaid Service and/or Traci Barnes, Assistant Commissioner of SUFFOLK COUNTY.

39.     Plaintiff's supervisor and Chronic Care Center Manager, Kathleen Fitzgerald ("Fitzgerald") has previously advised its staff that if WILLIAMS arrives at the Mary Gordon or Great River building that he is not allowed access in the building and to contact Staab immediately.

40.     Plaintiff reported WILLIAMS harassing and discriminatory conduct both verbally and formally, as such conduct occurred, to numerous upper level SUFFOLK COUNTY employees including but not limited to Fitzgerald, Wilson, Staab, and Peltz since November 2014 to present.

41.     In or about April 23, 2015, Plaintiff filed a Workplace Violence Report/Discrimination complaint, with the Respondent, SUFFOLK COUNTY and/or SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES (here and after collectively referred to as "SUFFOLK COUNTY") alleging SUFFOLK COUNTY employee and AME representative, WILLIAMS harassed, discriminated, and/or intentionally treated Plaintiff differently from other employees because of her race, and/or gender and/or age, and retaliated against her for filing a workplace violence complaint/Discrimination complaint.

42.     Upon information and belief, prior to April 23, 2015, SUFFOLK COUNTY and/or AME had actual and/or constructive knowledge of the discriminatory conduct of WILLIAMS and other SUFFOLK COUNTY employees but failed to supervise, train and/or take reasonable steps to stop such conduct.

43.     SUFFOLK COUNTY and/or AME failed to take immediate and appropriate corrective action once it was put on notice of WILLIAMS continued harassing and discriminatory behavior against Plaintiff.

44.     SUFFOLK COUNTY and/or AME were aware of WILLIAMS harassing and discriminatory conduct toward Plaintiff and thereby contributed to WILLIAMS harassing conduct.

45.     SUFFOLK COUNTY and/or AME were aware of WILLIAMS harassing and discriminatory conduct thereby allowing WILLIAMS to harass Plaintiff repeatedly.

46.     Upon information and belief, WILLIAMS no longer holds his position as AME Third Vice President. Effective July 2015, WILLIAMS returned to his position as a Social Services Examiner II, assigned to work in the Great River building.

47.     In or about April 23, 2015, employees of SUFFOLK COUNTY filed Workplace Violence Reports against Plaintiff. The allegations asserted against Plaintiff are unknown. No report or reference to the events (if any) which prompted the complaints has been provided to Plaintiff.

48.     Upon information and belief, employees of SUFFOLK COUNTY were incited by WILLIAMS and/or AME and/or SUFFOLK COUNTY to file complaints against Plaintiff in retaliation for her complaints, both verbally and formally, against WILLIAMS.

49.     In or about August 28, 2015, 127 days after Plaintiff had filed said complaint against WILLIAMS, SUFFOLK COUNTY purported to complete its investigation into the allegations of harassment and discrimination against WILLIAMS. SUFFOLK COUNTY reported that the allegations reported against WILLIAMS were "unsubstantiated". No explanation, reason, and/or report outlining the allegations asserted, the investigation procedures taken, and/or support for its findings were provided to Plaintiff.

50.     In or about August 28, 2015, SUFFOLK COUNTY purported to complete its investigation into complaints of workplace violence against Plaintiff. SUFFOLK COUNTY reported the allegations were "substantiated".

51.     What specific allegations were found to be substantiated, if any, are unknown to Plaintiff. No explanation, reason and/or report outlining the allegations asserted, the investigation procedures taken, and/or support for the findings were ever provided to Plaintiff.

**Applicable Policies and Procedures**

52.     Defendants SUFFOLK COUNTY and/or AME, or its agents, servants and employees, promulgated procedures, rules and regulations for the handling and investigation of sexual harassment, discrimination and/or workplace violence. Such procedures, rules and regulations, were in existence during Plaintiff's employment with SUFFOLK COUNTY and membership in and/or AME and had the force and effect of local law and were binding on its employees.

53.     Defendants SUFFOLK COUNTY and/or AME has adopted a policy prohibiting all threats, violence, sexual harassment and/or discrimination against staff in the workplace and promulgated procedures to investigate and manage risks when a potentially violent person poses or may pose a threat to a particular individual or group.

54.     SUFFOLK COUNTY policy entitled, "Workplace Violence Prevention Policy" provides that SUFFOLK COUNTY is "committed to a safe workplace" and thus "[e]mployees who feel that there is a physical or work practice that is creating an unsafe work situation should submit a verbal report or a written Workplace Incident Intake Form to Director of Labor Relations who will investigate and respond . . . [SUFFOLK COUNTY] encourages employees to bring their disputes or differences with other employees to the attention of their supervisor, Appointing Authority or Director of Labor Relations before the circumstances escalates into violence or creates a dangerous situation. [SUFFOLK COUNTY] is eager to assist in the resolution of

employee disputes, <u>and will not retaliate against employees for raising such concerns</u>." (emphasis added).

55.    SUFFOLK COUNTY'S policy defines acts of workplace violence "to include but are not limited to: physically harming another; shoving; pushing; harassing; intimidating; coercing; brandishing weapons; and threats or discussion of engaging in those activities." Furthermore, SUFFOLK COUNTY's policy provides that "Supervisors should be aware of the Agency's policies on Sexual Harassment so that, where appropriate, referrals can be made to the Agency's Sexual Harassment Officer, Traci Barnes ("Barnes"), Assistant Commissioner."

56.    Furthermore, SUFFOLK COUNTY policy states that SUFFOLK COUNTY will "promptly and thoroughly investigate all reports of threats of (or actual) violence and of suspicious individuals or activities." Specifically, SUFFOLK COUNTY's policy directs employees to report all threats or violence to the employee's Supervisor, Security, and Kevin Wilson ("Wilson"), Security Supervisor. SUFFOLK COUNTY's policy provides that after the report is made, "Wilson will assist in calling the Police to file a complaint . . . and will keep a record of all Department threats."

57.    Upon information and belief, AME has a similar workplace violence policy.

58.    SUFFOLK COUNTY's policy on Discrimination and Sexual Harassment provides that "[i]t is the policy of Suffolk County to provide a work environment for its employees free of all types of discrimination and sexual harassment . . . and [SUFFOLK COUNTY] has a zero [tolerance] policy for such acts and maintains a formal procedure for resolving complaints of discrimination and sexual harassment."

59.    SUFFOLK COUNTY's policy defines sexual harassment to include "any unwelcome or offensive sexual advances, requests for sexual favors, and other verbal or physical

conduct of an offensive sexual nature, such as uninvited touching or sexual related comments, when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. The unwanted behavior may include, but is not limited to, verbal abuse and humiliation, leers, indecent suggestions, and physical touching."

60.    SUFFOLK COUNTY's policy defines discrimination to include "wrongful treatment of persons because of their race, creed, color, sex, marital status, national origin, age, sexual orientation, disability, or military veteran status."

61.    SUFFOLK COUNTY's policy "strictly forbids any employee from engaging in any of the above-described conduct" and provides that "[a]nyone found to have engaged in discrimination or sexual harassment will be subject to disciplinary measures, including termination."

62.    SUFFOLK COUNTY's policy requires that as part of its commitment to a workplace free from sexual harassment and discrimination that it will take reasonable measures to prevent and address same.

63.    SUFFOLK COUNTY'S policy prohibiting Discrimination and Sexual Harassment states that a copy of such "affirmative action policy statement and statements defining discrimination and sexual harassment in the workplace has been provided [to] all employees . . ."

64.    Furthermore, SUFFOLK COUNTY's policy requires that when it becomes aware of actions which contribute to the creation of an intimidating, hostile, or offensive work environment that it will take action to address, eliminate, and stop such actions and that "[t]here will be no retaliation against any person pursing his or her rights under the law or this policy." (emphasis added).

65. SUFFOLK COUNTY's "Workplace Guidelines Against Sexual Harassment" provides "[t]he Director shall investigate said allegations, interview such witnesses and employees as may be necessary and sufficient to adjudicate the validity of such claim or allegation of sexual harassment" and furthermore, that the Director "shall issue a written decision, including both the findings and conclusions, determining the validity of such allegations of sexual harassment within 90 days after the receipt of such written complaint, copies of which shall be filed with the complainant, the individual alleged to have committed the sexual harassment, the pertinent department head, the County Executive, and the Chairman of the Legislative and Personnel Committee of the County Legislature."

66. Upon information and belief, AME has a similar discrimination/harassment policy.

**Acts of Harassment and/or Discrimination**

67. As a Social Service Examiner IV for SUFFOLK COUNTY, Plaintiff has frequently been subjected to practices and policies of SUFFOLK COUNTY and/or AME that willfully, intentionally, and unlawfully discriminate against and harass her on the basis of her race, gender, and/or age.

68. The policies and practices of SUFFOLK COUNTY and/or AME were such that reports of violent, harassing, and/or discriminatory behavior by employees of SUFFOLK COUNTY made by Plaintiff went ignored and/or unanswered and/or were inadequately investigated in contravention of SUFFOLK COUNTY's policies, allowing employees, such as WILLIAMS, to repeatedly sexually harass and discriminate against Plaintiff.

69. SUFFOLK COUNTY and/or AME supported actions made by its employees and failed to promptly investigate or address allegations of harassment and discrimination toward

Plaintiff and failed to implement and/or employ proper practices and procedures to investigate and protect Plaintiff from such unlawful discriminatory behavior.

70.     Furthermore, as an employee of SUFFOLK COUNTY and member of AME, Plaintiff has been the subject of practices and policies of SUFFOLK COUNTY that willfully, intentionally, and unlawfully harassed and discriminated against her in retaliation for her bringing complaints of harassment, discrimination, and hostile behavior.

71.     The harassing and/or discriminatory practices in question committed by SUFFOLK COUNTY and/or AME and/or WILLIAMS, as described more fully below, include, but are not limited to:

i.  WILLIAMS repeatedly yelling at and/or demeaning Plaintiff in front of supervisory staff, support staff, and other employees under Plaintiff's supervision;

ii.  WILLIAMS yelling profanities directed at Plaintiff, such as "where the fuck is she" while in her workplace in the presence of other employees;

iii.  WILLIAMS yelling derogatory, inappropriate and/or sexually demeaning profanities directed at Plaintiff in front of supervisory staff, support staff, and other employees under Plaintiff's supervision, including calling Plaintiff a "bitch";

iv.  WILLIAMS engaging in unwelcome and inappropriate sexually suggestive conduct including kissing Plaintiff and other supervisory employees on the hand;

v.  WILLIAMS recording Plaintiff during an employee evaluation meeting;

vi.  WILLIAMS repeatedly demeaning and attacking Plaintiff's character in front of employees;

vii.  WILLIAMS harassing, intimidating, and belittling Plaintiff due to her authority and responsibility to oversee and evaluate employees;

    viii.  WILLIAMS inciting and/or influencing other employees of SUFFOLK COUNTY and/or AME, within Plaintiff's unit and those under Plaintiff's supervision, to file grievances and/or complaints against Plaintiff;

    ix.  WILLIAMS influencing other AME union representatives to incite employees, both within Plaintiff's unit and those under Plaintiff's supervision, to file grievances and/or complaints against Plaintiff;

    x.  WILLIAMS repeatedly belittling and yelling at Plaintiff while walking throughout the hallways of Plaintiff's place of employment thereby causing continued embarrassment and humiliation for Plaintiff creating a hostile work environment due to the severe and pervasive nature of these actions;

    xi.  WILLIAMS belittling and yelling at Plaintiff during various evaluation meetings while in the presence of other employees thereby causing continued embarrassment and humiliation for Plaintiff and creating a hostile work environments due to the severe and pervasive nature of these actions;

    xii.  WILLIAMS routinely overstepping his authority as a union representative and using his position as a ruse to repeatedly engage in hostile and offensive conduct toward Plaintiff;

    xiii.  Supervisory staff denying Plaintiff union representation upon filing of work place violence complaint against WILLIAMS for his harassing and discriminatory behavior committed toward her while abusing his position as a union representative;

    xiv.  Supervisory staff, including but not limited to Ed Moltzen, the second investigator assigned, denied Plaintiff union representation when she was interviewed in May 2015 as part of a continued investigation into complaints filed by employees against Plaintiff;

    xv.  Supervisory staff, including but not limited to Kevin Wilson and Jennifer McNamara, failing to adequately respond, address, and investigate workplace violence complaints reported against

WILLIAMS in contravention of SUFFOLK COUNTY's procedures and policies regarding violence and/or sexual harassment and/or discrimination in the workplace; and

xvi. WILLIAMS harassing behavior causing Plaintiff to feel threatened due to the severe and pervasive nature of these actions which created a hostile work environment.

72.    SUFFOLK COUNTY and/or AME and/or WILLIAMS treated Plaintiff improperly and differently than her coworkers who are male and/or not Caucasian and/or over the age of forty, in that they:

    i.   Incited subordinate employees to file grievances against Plaintiff;

    ii.   Repeatedly yelled derogatory profanities toward women such as "Where the fuck is she" and "Where is that bitch," referring to Plaintiff throughout the building hallways;

    iii.   Engaged in sexually suggestive unwelcome behavior toward woman including touching and kissing Plaintiff on her hand;

    iv.   Rendered a finding of workplace violence against Plaintiff for conduct unknown to Plaintiff allegedly committed by Plaintiff;

    v.   Singling out Plaintiff and/or woman for a finding of workplace violence;

    vi.   Ignored workplace violence complaints made by Plaintiff against its employees;

    vii.   Failed to take any steps to address and/or investigate workplace violence complaints made by Plaintiff against its employees;

    viii.   Failed to provide Plaintiff with union representation as required, among other things;

    ix.   Failed to supervise and/or train employees regarding discriminatory conduct and/or practices.

73.    SUFFOLK COUNTY and/or AME harassed and discriminated against Plaintiff after Plaintiff properly performed her duties as a Social Service Examiner IV in supervising and evaluating the productivity level of employees.  Such discrimination and harassment was in the form of employees filing grievances and/or complaints against Plaintiff. This prompted an investigation against Plaintiff by SUFFOLK COUNTY.

74.     SUFFOLK COUNTY further harassed and discriminated against Plaintiff for performing her supervisory duties by issuing a "substantiated" finding of workplace violence against Plaintiff for unfounded actions which were allegedly taken by Plaintiff against other employees.

75.     The alleged actions giving rise to a "substantiated" finding of workplace violence by SUFFOLK COUNTY are still unknown to Plaintiff, as Plaintiff was never informed of her alleged actions that constituted improper workplace behavior despite Plaintiff's repeated request for same.

76.     Upon information and belief, Plaintiff has never engaged in any behavior which would constitute workplace violence.

77.     Any finding to the contrary by SUFFOLK COUNTY is merely a pretext to retaliate against Plaintiff for filing her complaint.

78.     SUFFOLK COUNTY and/or AME further retaliated against Plaintiff after Plaintiff reported William's harassing and discriminatory behavior to her supervisor, union and other employees of SUFFOLK COUNTY.  This retaliation by SUFFOLK COUNTY came in the form of issuing a "substantiated" finding against Plaintiff following its purported investigation into allegations allegedly committed by Plaintiff but which were entirely without merit.

79.     Plaintiff is informed and believes that SUFFOLK COUNTY and/or AME and other employees under its authority knew of the harassment of, discrimination and retaliation against Plaintiff by SUFFOLK COUNTY and AME and/or WILLIAMS.

80.     Due to the hostile work environment, harassment, retaliatory actions, and discrimination created by and permitted to continue by SUFFOLK COUNTY and/or AME in

contravention of its policies, Plaintiff began experiencing stress, anxiety, fear, depression, and an inability to eat or sleep.

81. Plaintiff was subjected to harassment, discrimination, and improper conduct because of her race, gender and/or age.

82. Plaintiff was subjected to harassment, discrimination, and improper conduct because she is female.

83. Plaintiff was subjected to harassment, discrimination, and improper conduct because she is Caucasian.

84. Plaintiff was subjected to reverse age discrimination because she is an employee under the age of forty.

85. SUFFOLK COUNTY and/or AME and/or WILLIAMS conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile, and/or offensive work environment.

86. SUFFOLK COUNTY and/or AME and its employees retaliated against Plaintiff for her complaints made known to her employer in violation of the law and SUFFOLK COUNTY'S and AME's policies, subjecting her to further and more extensive harassment, improper conduct, embarrassment, pain and suffering.

**Specific Incidents of Harassment and/or Discrimination**

87. In or about November 7, 2014 Plaintiff was scheduled to hold a weekly meeting at SUFFOLK COUNTY, in the Great River building to discuss the productivity of an employee under Plaintiff's supervision. In addition to Plaintiff, a supervisory employee and the subordinate employee were scheduled to be present at the meeting.

88.     Prior to the meeting, the employee requested union representation.  Plaintiff granted this request.

89.     Upon commencement of the meeting the employee arrived for the meeting with two (2) union representatives.

90.     Plaintiff believing that the employee was only entitled to be represented by a single union representative, sought clarification from her supervisor, Kathleen Fitzgerald ("Fitzgerald").

91.     Fitzgerald advised Plaintiff that the employee was not entitled to a union representative at all during the meeting, much less two (2) union representatives, because the meeting was not disciplinary in nature but rather an operational performance meeting.

92.     Based on this information, Plaintiff advised the employee that she would no longer be entitled to union representation during such meetings.

93.     Plaintiff was later advised that WILLIAMS, in his role as AME Third Vice President and Union Representative, was coming to the Great River building in response to hearing that union representation for the operational performance meeting was not warranted.

94.     Shortly thereafter, Plaintiff left the Great River building.

95.     Upon information and belief, before arriving at the Great River building, WILLIAMS called Barnes, Assistant Commissioner and Agency's Sexual Harassment Office, and was advised by Barnes that he is not permitted in the building.

96.     Notwithstanding Barnes purported instruction to WILLIAMS that he is not permitted in the Great River Building, WILLIAMS arrived at the Great River building and was able to gain access to the building.

97.     Immediately upon WILLIAMS gaining access to the building, he raced throughout the building workspace and hallways screaming and yelling while looking for Plaintiff.

98.   During this time, WILLIAMS yelled derogatory profanities and demeaning statements regarding the Plaintiff throughout the hallway such as "Where the fuck is she" and "Where is that bitch."

99.   Numerous SUFFOLK COUNTY employees, including managers, union representatives, and Plaintiff's colleagues heard WILLIAMS yelling profane and demeaning comments regarding Plaintiff.

100.   During the hostile commotion created by WILLIAMS, Plaintiff received text messages from coworkers expressing concerns for her safety as well as their own due to WILLIAMS' irrational and irate state.

101.   Ultimately, the Administration was contacted regarding WILLIAMS offensive, disruptive, and hostile presence in the building.   WILLIAMS refused to stop. SUFFOLK COUNTY and/or AME permitted him to continue his violent, harassing, and discriminatory behavior toward Plaintiff until he was finally removed from the building by another employee of SUFFOLK COUNTY at the direction of Fitzgerald. Plaintiff promptly reported WILLIAMS' hostile behaviors from November 7, 2014 to her supervisor and the Administration at SUFFOLK COUNTY.

102.   SUFFOLK COUNTY and/or AME failed to take immediate and appropriate corrective action after it was put on notice of WILLIAMS harassing and discriminatory behavior against Plaintiff.

103.   The events of November 7, 2014 were sufficiently severe and pervasive to create a hostile work environment, in that many employees of SUFFOLK COUNTY and/or AME became aware of the events that were occurring and began discussing it amongst themselves and with Plaintiff.

104.     The conduct committed by WILLIAMS on November 7, 2014 had the purpose or effect of unreasonably interfering with the work performance of Plaintiff and/or had the purpose or effect of creating an intimidating, hostile or offensive work environment for Plaintiff.

105.     In or about February 10, 2015, Plaintiff, another supervisor, and Plaintiff's supervisor Fitzgerald, were scheduled to hold a meeting with an employee at SUFFOLK COUNTY in the Mary Gordon building, to discuss that employee's insubordinate conduct at a previous meeting and her work productivity.

106.     WILLIAMS was assigned as a union representative for the employee during this meeting.

107.     During this meeting, Plaintiff stated to WILLIAMS that she was aware of his behavior on November 7, 2014. She expressed to WILLIAMS that she was upset by his conduct and believed his conduct interfered with her work performance and/or created an intimidating, hostile, and or offensive work environment.

108.     WILLIAMS then became irate with Plaintiff.

109.     Throughout the meeting, WILLIAMS repeatedly yelled, slammed his hands on the desk, and made numerous hostile, threatening, demeaning, and derogatory comments toward Plaintiff and threatened to bring charges against her in the presence of SUFFOLK COUNTY and/or AME employees.

110.     During the February 10, 2015 meeting, WILLIAMS admitted to making the profane and derogatory comments on November 7, 2014 toward Plaintiff after being confronted by Plaintiff and another managing employee.  Specifically, WILLIAMS admitted to yelling "where is that bitch" while walking down the hallway at Plaintiff's place of employment.

111.    During this time, Plaintiff inquired whether WILLIAMS ill feelings toward her caused him to feel bias toward her whenever WILLIAMS is assigned to represent one of the employees under Plaintiff's supervision.

112.    WILLIAMS replied "Yes."

113.    After the discussion during the February 10, 2015 meeting ended, WILLIAMS engaged in further hostile, discriminatory, and harassing behavior when he stood up, took Plaintiff's hand and kissed it. WILLIAMS also took Plaintiff's supervisor, Fitzgerald's hand and kissed it. This conduct was unwelcome, inappropriate, and of a sexual nature or connotation.

114.    This unwelcome sexually suggestive conduct committed by WILLIAMS made Plaintiff extremely uncomfortable and had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile and/or offensive work environment for Plaintiff.

115.    WILLIAMS behavior and conduct during the February 10, 2015 meeting were sufficiently severe and pervasive to create a hostile work environment.

116.    SUFFOLK COUNTY and/or AME failed to take disciplinary and/or immediate and appropriate corrective action once it was put on notice of WILLIAMS harassing and discriminatory behavior against Plaintiff.

117.    On March 13, 2015, Plaintiff contacted Wilson, Security Supervisor, to request a meeting to discuss the incidents that occurred and the hostile, discriminatory, and harassing conduct of WILLIAMS.

118.    In or about March 19, 2015, Plaintiff contacted AME regarding WILLIAMS harassing and discriminatory behavior. The Union refused to provide Plaintiff with assistance or

representation with respect to WILLIAMS harassing and discriminatory behavior despite being obligated to do so.

119.   In or about March 16, 2015, Plaintiff was contacted by Wilson who requested to meet with Plaintiff regarding an investigation into workplace violence complaints/discrimination complaints filed against Plaintiff by SUFFOLK COUNTY employees.

120.   After Wilson completed his interview with Plaintiff regarding the investigation against her, Plaintiff further discussed the incidents that occurred with respect to WILLIAMS hostile, discriminatory, and harassing behavior. Plaintiff requested from Wilson complaint forms to file a formal complaint with SUFFOLK COUNTY against WILLIAMS.

121.   On March 20, 2015 Plaintiff contacted Staab to request a meeting to discuss concerns she had regarding WILLIAMS as well as concerns relative to another AME union representative, Joan Vaccarro ("Vaccarro").

122.   On March 31, 2015, Plaintiff's supervisor, Fitzgerald, reminded SUFFOLK COUNTY employees that WILLIAMS is not permitted in the building without receiving permission.

123.   On April 1, 2015, Plaintiff emailed Staab to inquire about the procedure to submit her formal complaint against WILLIAMS and specifically, to whom she should submit the complaint. Staab advised Plaintiff to speak with Wilson regarding the proper forms and procedure to file the formal complaint against WILLIAMS.

124.   On April 6, 2015, Plaintiff again contacted Wilson seeking the complaint form previously requested to file the formal complaint against WILLIAMS. Plaintiff asked Wilson to advise her of what forms were required for her harassment complaint against WILLIAMS. Wilson

responded by advising Plaintiff that he was on vacation and would forward the form when he returned on April 13, 2015.

125.    On April 7, 2015, Plaintiff contacted Alice Peltz ("Peltz"), a SUFFOLK COUNTY employee and Union Representative regarding WILLIAMS' hostile, harassing, and discriminatory behavior and inquired as to the procedure to submit a complaint against him with the union.

126.    Plaintiff explained to Peltz that that in addition to submitting the complaint with Wilson, she also wanted to submit a complaint with the Union regarding his hostile, discriminatory, and harassing behaviors. Plaintiff followed up with her inquiry by making phone calls to Peltz requesting the same information.

127.    Notwithstanding Plaintiff's repeated requests for information, Peltz declined and/or refused to provide same.

128.    As a result of the continued failure of SUFFOLK COUNTY and/or AME to provide an appropriate recourse or mechanism to submit a complaint regarding WILLIAMS' hostile, discriminatory, and harassing behaviors, Plaintiff began reporting WILLIAMS conduct contemporaneously as it occurred.   These complaints were made to various high ranking SUFFOLK COUNTY and/or AME employees including but not limited to Fitzgerald, Wilson, Staab, and Peltz since November 2014 to present.

129.    In or about April 9, 2015, Plaintiff and another supervisor were scheduled to hold a meeting with an employee to discuss that employee's evaluation. WILLIAMS was assigned to represent the employee during this meeting.

130.    Upon WILLIAMS arrival, he was permitted access to the building and was escorted to meet with the employee prior to the meeting. Shortly thereafter the meeting began.

131.    During the meeting, Plaintiff observed that WILLIAMS was fidgeting with his phone and then placed his phone on the desk. Plaintiff proceeded to ask WILLIAMS whether he was recording the conversation on his phone to which WILLIAMS responded "yes" and then said "no, well not on this phone."

132.    Plaintiff asked WILLIAMS what he was using to record the conversation at which point WILLIAMS pulled his suit jacket back to expose a device attached to his tie. WILLIAMS responded that the device was a camera.

133.    Plaintiff stated that WILLIAMS is not permitted to record the evaluation and if WILLIAMS continued to attempt to record and/or actually recorded the evaluation, the meeting would be over.

134.    Plaintiff promptly notified her supervisor, Fitzgerald, of the events that occurred. Fitzgerald contacted Administration who confirmed with labor relations that WILLIAMS was not permitted to record the evaluation.

135.    Plaintiff then returned to the office where WILLIAMS was waiting and repeated to him that he was not permitted to record the evaluation. WILLIAMS instantly became irate, began yelling, and proceeded into the building hallways screaming in a hostile and intimidating manner so employees could hear him.

136.    Soon thereafter, WILLIAMS returned to the office where the meeting was to be held and advised Plaintiff and Fitzgerald that he would put the camera away. WILLIAMS then became insubordinate by insisting that his phone remain on the desk when asked by Plaintiff to put it away during the evaluation. Plaintiff explained that because his cell phone could be used as a recording device, it was not allowed on the desk. WILLIAMS eventually agreed and stated that he was not recording the conversation. The evaluation then resumed.

137.    During the meeting, the employee who was the subject of the meeting read her evaluation, stated that her evaluation was accurate and proceeded to sign it.

138.    Immediately thereafter, WILLIAMS stated to the employee "you make sure you write a rebuttal."  Plaintiff asked the employee if she had any concerns with her evaluation to which WILLIAMS repeated "she will write a rebuttal."

139.    Plaintiff stated to both the employee and WILLIAMS that if there are any concerns regarding the evaluation they could be addressed at this meeting.  WILLIAMS responded "she will write them down, she don't have to tell you."

140.    At this point, Plaintiff noted that the employee appeared to be growing concerned by WILLIAMS behavior and confused as to why he was insisting that she write a rebuttal to an evaluation which she agreed was accurate. Plaintiff again asked the employee if she had any concerns with her evaluation and the employee responded "no."  The meeting concluded.

141.    At a subsequent evaluation meeting, the same employee advised Plaintiff that she would not attend with union representation because WILLIAMS was assigned as her representative and she did not want to be embarrassed by him again.  Plaintiff took this to refer to the hostile incidents which transpired on April 9, 2015.

142.    On April 13, 2015, about 1 month after Plaintiff met with both Wilson and Staab to reiterate her concerns and conduct displayed by WILLIAMS, she received the requested complaint form. At this time, Wilson advised Plaintiff that he was unable to investigate her claims against WILLIAMS due to a change in procedure.  Plaintiff was not given any further information.

143.    On or about April 22, 2015, Plaintiff emailed Wilson to advise him that the workplace violence complaint and/or discrimination complaint against WILLIAMS was complete. Plaintiff inquired as to Wilson's availability to drop off the complaint to him.

144.     On or about April 23, 2015, Wilson replied that he would stop by her office that morning; however, when Wilson reported to Plaintiff's office Plaintiff had stepped away from her desk. Later that day, Plaintiff left the completed complaint in Wilson's office and sent an email to Wilson advising him of same. This email was read by Wilson on April 24, 2015 at 8:21 A.M.

145.     Plaintiff's complaint, dated April 22, 2015, indicated that SUFFOLK COUNTY previously attempted to put an end to WILLIAMS harassing and discriminatory conduct by restricting his access to and around the building. However, WILLIAMS was repeatedly insubordinate and refused to obey the restrictions put in place.

146.     Wilson advised Plaintiff that he was going to forward her complaint against WILLIAMS to Labor Relations as well as to Barnes, Assistant Commissioner and Agency's Sexual Harassment Office.

147.     On or about April 23, 2015, pursuant to SUFFOLK COUNTY policy, Plaintiff submitted her complaint regarding the ongoing harassment and discrimination with Wilson, Security Supervisor.

148.     Plaintiff did not receive any communication from SUFFOLK COUNTY regarding the complaint she filed against WILLIAMS and/or regarding the investigation into WILLIAMS harassing and discriminatory conduct.

149.     SUFFOLK COUNTY's "Workplace Guidelines Against Sexual Harassment" provides "[t]he Director *shall* investigate said allegations, interview such witnesses and employees as may be necessary and sufficient to adjudicate the validity of such claim or allegation of sexual harassment" and furthermore, that the Director "shall issue a written decision, *including both the findings and conclusions*, determining the validity of such allegations of sexual harassment *within 90 days* after the receipt of such written complaint, copies of which shall be filed with the

complainant, the individual alleged to have committed the sexual harassment, the pertinent department head, the County Executive, and the Chairman of the Legislative and Personnel Committee of the County Legislature." (emphasis added).

150. Pursuant to SUFFOLK COUNTY's policy, they had until July 22, 2015 to properly investigate the harassing and discriminatory conduct committed by WILLIAMS against Plaintiff and render a written decision, including both the findings and conclusions.

151. Upon information and belief, employees and/or witnesses of WILLIAMS harassing and discriminatory behavior were not adequately interviewed in connection with Plaintiff's complaint and in contravention of SUFFOLK COUNTY policies and procedures.

152. SUFFOLK COUNTY and/or AME failed/refused to timely and/or adequately investigate Plaintiff's complaint against WILLIAMS in contravention of SUFFOLK COUNTY and/or AME policies and procedures to adequately address and resolve all workplace violence and/or harassment complaints.

153. Upon information and belief, SUFFOLK COUNTY and/or AME failed/refused to interview Staabb who witnessed the harassing and discriminatory behavior committed by WILLIAMS, until July 2015, over two (2) months after the complaint was filed.

154. Upon information and belief, when SUFFOLK COUNTY employees including Ms. Fitzgerald, Mr. Hill, Ms. Brown, Mr. Lesko, and Ms. Staab were questioned as part of the purported investigation of Plaintiff's complaint against WILLIAMS. These employees corroborated the harassing and discriminatory events reported by Plaintiff, however, Plaintiff's allegations were reported "unsubstantiated" by SUFFOLK COUNTY.

155. A written decision regarding the purported investigation into William's harassing and discriminatory behavior was not issued until August 28, 2015.

156.   Notwithstanding SUFFOLK COUNTY's delinquent decision regarding the complaint against WILLIAMS, SUFFOLK COUNTY failed to include within the decision, its findings regarding WILLIAMS harassing and discriminatory behavior.

157.   According to the "Work Violence Notification," in or about April 23, 2015, employees of SUFFOLK filed workplace violence complaints against Plaintiff. However, Plaintiff was first interviewed by Wilson regarding alleged complaints filed against her in March 2015. The "Work Violence Notification" received by Plaintiff on August 28, 2015, indicated complaints were made against Plaintiff on April 23, 2015, the same day Plaintiff submitted her complaint with Wilson for WILLIAMS harassing and discriminatory behavior.

158.   Upon information and belief, employees of SUFFOLK COUNTY were incited by WILLIAMS and/or AME and/or SUFFOLK COUNTY to file such complaints against Plaintiff. The allegations in these purported complaints against Plaintiff are unknown to Plaintiff.

159.   Upon information and belief, after Plaintiff filed a complaint against WILLIAMS, SUFFOLK COUNTY employees filed complaints against Plaintiff in retaliation for her filing said complaint.

160.   Upon information and belief, investigations by SUFFOLK COUNTY regarding complaints filed against Plaintiff began in or about March 2015 and were conducted by Wilson. Plaintiff was investigated again in May 2015, by Ed Moltzen, ("Moltzen"), Community Development Program Analyst.

161.   During Plaintiff's interviews, as part of the investigation against her, Plaintiff was not advised of her right to receive union representation and/or was not provided any information regarding the allegations asserted against her.

162.    During the interview, Plaintiff requested information from Motlzen, the second investigator assigned to investigate complaints against Plaintiff. Motlzen failed to provide her with any information regarding the complaint, including but not limited to, when the claims were filed against Plaintiff and what the allegations against Plaintiff consisted of. Plaintiff was never notified of the actions she allegedly committed giving rise to the investigation against her.

163.    Additional meetings were scheduled in or about June 2015 regarding complaints alleged against Plaintiff. Plaintiff was still not notified of the allegations asserted against her.

164.    Throughout the investigation conducted by SUFFOLK COUNTY into the complaint asserted against Plaintiff, Plaintiff was not provided any information regarding the allegations in order to provide a response to said allegations and properly defend the claims asserted against her.

165.    In or about June 1, 2015, Plaintiff emailed Staab in an attempt to receive an update regarding the harassment and discrimination complaint she filed on April 23, 2015. Plaintiff did not receive notification, of any kind, regarding the processing or investigation of her complaint since filing the complaint on April 23, 2015.

166.    Plaintiff advised Staab that this matter was time sensitive as WILLIAMS was being removed from the Union and reassigned to a Medicaid Unit.

167.    In June 1, 2015, Staab responded to Plaintiff and advised her that the Safety Officer has ninety (90) days to complete the investigation, that the investigation should start within a week, and that Plaintiff would be contacted soon thereafter.

168.    This was the first communication and/or notification Plaintiff received regarding her complaint against WILLIAMS, filed in or about April 23, 2015.

169.   In or about June 3, 2015, Plaintiffs supervisor, Fitzgerald sent an email to SUFFOLK COUNTY employees advising them to distribute the following notice to staff:

> In the event that an employee decides to file a grievance, the completed grievance should be submitted to his/her MA Center Manager. Once submitted by an employee, a grievance must be addressed immediately, as there is a time period to be followed with the grievance steps.

170.   In or about June 4, 2015, Plaintiff was contacted and investigated by Alexandra Gordon who advised Plaintiff that she would be notified of a decision regarding her complaint against WILLIAMS within two (2) weeks.

171.   Plaintiff was not provided Union representation regarding her complaint against WILLIAMS for his harassing and discriminatory conduct.

172.   Subsequent to meeting with Gordon in or about June 4, 2015, Plaintiff was not contacted by any employee of SUFFOLK COUNTY regarding her complaint against WILLIAMS.

173.   Over two (2) months later, in or about August 24, 2015, Plaintiff contacted Alexandra Gordon, to inquire the status of the complaint she filed with SUFFOLK COUNTY against WILLIAMS on April 23, 2015. She did not receive any response from Ms. Gordon.

174.   Plaintiff reported WILLIAMS' harassing and discriminatory conduct both verbally and formally, as such conduct occurred, to numerous upper level SUFFOLK COUNTY employees including but not limited to Fitzgerald, Wilson, Staab, and Peltz since November 2014 to present.

175.   SUFFOLK COUNTY and/or AME was aware of WILLIAMS' harassing and discriminatory conduct toward Plaintiff thereby contributing to the harassing conduct.

176.   SUFFOLK COUNTY and/or AME was aware of WILLIAMS harassing and discriminatory conduct toward Plaintiff thereby allowing WILLIAMS to harass Plaintiff.

177.   Plaintiff's complaints regarding WILLIAMS harassing and discriminatory behavior were repeatedly ignored by SUFFOLK COUNTY and/or AME.

178.   SUFFOLK COUNTY and/or AME failed to follow its policy in processing and investigating Plaintiff's complaint.

179.   SUFFOLK COUNTY and/or AME failed to promptly and thoroughly investigate and take appropriate corrective action regarding WILLIAMS conduct toward Plaintiff pursuant to SUFFOLK COUNTY and/or AME policy and procedure.

180.   In or about August 20, 2015, Plaintiff was advised that WILLIAMS would be in the building to attend an interview scheduled at 10:30 A.M. The interview concluded at 11:00A.M., however, WILLIAMS remained on the property until at least 2:00 P.M., approximately three (3) hours after the interview concluded.

181.   During this time, Plaintiff avoided WILLIAMS while he was in the building. Plaintiff took an alternative exit to leave the building for lunch and when she returned at 2:00 P.M., WILLIAMS was still on the property. Upon Plaintiff's return from lunch, WILLIAMS was standing in front of the building doors requiring Plaintiff to pass him in order to enter the building to report back to work.

182.   Upon information and belief, WILLIAMS authority to be present in the building to attend an interview concluded when the interview ended at 11:00 A.M. WILLIAMS remained in the building until at least 2:00 P.M. without any business to conduct and/or without authority to do so.

183.   Upon noticing WILLIAMS' continued presence in the building after the interview concluded, upper management contacted WILLIAMS' direct supervisor to inquire as to whether he was off for the remainder of the day.  No action was taken by SUFFOLK COUNTY and/or AME to remove WILLIAMS from the building.

184.    In or about August 28, 2015, Plaintiff received an email from Joan Murray, Secretarial Assistant in the Personnel and Payroll Department, advising Plaintiff that the investigation against her and the investigation against WILLIAMS were complete.

185.    In or about August 28, 2015, Plaintiff was advised that the final written report was forwarded to the Commissioner as per SUFFOLK COUNTY policy.

186.    In or about August 28, 2015, Plaintiff was further advised that the Commissioner will meet with SUFFOLK COUNTY employees to discuss the findings of the investigation. A meeting was scheduled with Plaintiff and Defendant, O'NEILL. Ms. Traci Barnes, Assistant Commissioner, were also present.

187.    SUFFOLK COUNTY'S purported investigation against WILLIAMS' harassing and discriminatory behavior against Plaintiff, Investigation # WV-2015-09, reported a finding of "unsubstantiated".

188.    No explanation, reason, or support regarding the "unsubstantiated" finding was provided to Plaintiff.

189.    The "Notification of Final Report" issued to Plaintiff indicated that the investigation was completed on June 19, 2015, however, the investigation and/or notification of the findings were not reported to Plaintiff until August 28, 2015.

190.    This date was weeks before Staab, Plaintiff's witness who observed WILLIAMS harassing and discriminatory behavior, was interviewed as part of the purported investigation into Plaintiff's complaint.

191.    Plaintiff signed the Notification Report on August 28, 2015 acknowledging only that she was given notification that the purported investigation had concluded. No further information regarding the investigation was given to Plaintiff.

192.    SUFFOLK COUNTY's investigation against Plaintiff's alleged misconduct, Investigation # WV-2015-11c, reported a finding of "substantiated" with respect to unknown allegations asserted by one employee. No report outlining the "substantiated" findings was provided to Plaintiff.

193.    During the August 28, 2015 meeting with Defendant, O'NEILL, Plaintiff requested to see the findings report. O'NEILL stated that a findings report was not provided to the Commissioner or to the Assistant Commissioner. Plaintiff was advised by O'NEILL that no details regarding the findings against her were available and that both he and the Assistant Commissioner were not aware of what wrongful acts were allegedly committed by Plaintiff.

194.    Further the "Notification of Final Report" issued to Plaintiff incorrectly indicated that the investigation was completed on June 19, 2015, however, the investigation and/or notification of the findings against her were not reported to Plaintiff until August 28, 2015.

195.    Plaintiff signed the report on August 28, 2015 acknowledging only that she was given notification that the investigation against her concluded. No further information regarding the allegations asserted against Plaintiff and/or the findings to support the "substantiated" finding rendered against her was provided to her.

196.    In or about August 2015 and September 2015, Plaintiff reported to AME Union Hall on numerous occasions in an attempt to receive assistance and/or representation with respect to the hostile, harassing, and discriminatory behavior Plaintiff was forced to endure by WILLIAMS. No action was taken by the union.

197.    In or about September 1, 2015, Plaintiff wrote a letter to Jennifer McNamara at SUFFOLK COUNTY, formally disputing both the findings rendered against WILLIAMS as well as the findings rendered against her. This letter was also sent to O'NEIL, and Staab. Plaintiff again

set forth the ongoing harassing and discriminatory behavior committed by WILLIAMS against Plaintiff. Plaintiff did not receive a response, of any kind, to this letter.

198.    In or about September 2015, Plaintiff met with Dan Levler, Vice President of AME Union regarding Plaintiff's complaints against WILLIAMS for his discriminatory and harassing behavior. No action was taken by Mr. Levler and he has not contacted Plaintiff since meeting with her.

199.    As a result of Plaintiffs' adverse treatment owing to odious harassment and discrimination and based on race, sex, age, gender and/or in retaliation all pursuant to Title VII of the Civil Rights Act of 1964, as amended. codified at 42 U.S.C. Section 2000e *et seq.*, the Civil Rights Act of 1991 and for performing her duties as a supervisory employee of SUFFOLK COUNTY and/or for filing a workplace violence complaint of harassment and discrimination against WILLIAMS, she has suffered financial damages as well as severe emotional distress.

200.    On or about May 19, 2016, Plaintiff was advised by Doreen Graci ("Graci"), Plaintiff' Union Representative, that Vaccaro admitted to inciting other employees to file grievances/complaints against Plaintiff.

201.    Vaccaro's statements to Graci, coupled with the temporal proximity between the complaints filed by and against Plaintiff, confirm her suspicions regarding Vaccaro's involvement in provoking subordinate employees to file complaints against her solely to harass and intimidate her for engaging in a protected activity.

202.    Vaccaro's statements to Plaintiff's Union Representative is further evidence in support of the conclusion that the four (4) workplace violence complaints filed against Plaintiff were pretextual, without merit, and filed wholly with the intent of harassing and retaliating against Plaintiff.

203.   This additional act of retaliation is further evidenced by a complaint brought by Defendant employee Kathryn Delmar, for which Moltzen was again assigned as the investigator.

204.   Pursuant to Defendants' Policy, Defendants' have 90 days from receipt of a complaint to issue a written decision.

205.   With respect to this most recent complaint, Moltzen interviewed Plaintiff on May 11, 2016 without providing any prior notice to Plaintiff as to the subject matter of the meeting and without providing a response to Plaintiff's inquiry regarding her request to have representation present during the meeting.

206.   Further on or about August 19, 2016, Staab, contacted O'NEILL, via email to express her concerns regarding the number of workplace violence complaints and requested a meeting with the Commissioner to discuss her concerns.

207.   As a result of the continued acts of harassment Plaintiff was subjected to by Vaccaro, Plaintiff filed a Workplace Violence Complaint against Vaccaro with SUFFOLK COUNTY's Bureau Director, Sharon Stenger, on or about October 3, 2016.

208.   On or about October 4, 2016, approximately five (5) months after Plaintiff's interview with Moltzen and after Plaintiff filed the Workplace Violence Complaint against Vaccaro, Plaintiff received a Notification from Defendant SUFFOLK COUNTY. Said Notification, entitled "Final Report and Recommendation" was purportedly rendered in response to the workplace violence complaint brought by Defendant employee, Kathryn Delmar in or about May 2016.

209.   Notably the Notification failed to indicate the date of the complaint for which an "inconclusive" finding was rendered on September 13, 2016. Upon information and belief, the complaint date was intentionally omitted as the complaint was made in or about May 2016 and as

such the alleged finding was rendered well outside the Respondent's timeframe for addressing complaints of workplace violence. Further, the assigned investigator, Moltzen interviewed Plaintiff on May 11, 2016 in connection with this complaint. Upon information and belief, only Plaintiff was the subject of this complaint, however, the Notification erroneously lists two additional "respondents". Defendants deliberately added additional "respondents" in attempt to portray that Plaintiff was not singled out from her fellow co-workers.

210.    To date, Plaintiff has not been contacted by Labor Relations regarding the Workplace Violence complaint she filed against Vaccaro on October 3, 2016, nor has she received correspondence advising her of the status of the SUFFOLK COUNTY's investigation into same. Upon information and belief Defendant SUFFOLK COUNTY has not commenced any investigation into Plaintiff's claims of continued harassment and has not conducted any interviews. Further, upon information and belief, no action has been taken to prevent and/or address the continued acts of discrimination Plaintiff has endured.

211.    Based on the foregoing, SUFFOLK has subjected Plaintiff to harassment, discrimination, and retaliation based on her race and/or gender and/or age in violation of Title VII of the Civil Rights Act of 1964 as amended, as well as all applicable local and state provisions that can be inferred from the facts set forth herein.

### FIRST CAUSE OF ACTION (AGAINST ALL DEFENDANTS)

212.    Plaintiff JESSICA COHEN repeats and realleges the prior paragraphs of this complaint as if the same were fully set forth at length herein.

213.    Defendants took the aforementioned acts of discrimination based on gender, race, color, religion, sex, and/or age in Violation of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. Section 2000e t seq., and the Civil Rights Act of 1991.

214.    While acting under color of state law, Defendants deprived Plaintiff of her constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983, and all related provisions of the New York State Constitution.    Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.    Such deliberate indifference may be inferred in the following ways:

   a.   Defendants' custom or practice of discriminating and/or retaliating against Plaintiff based on her constitutionally protected forms of speech, expression and association. The discriminatory and/or retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policy makers;

   b.   Supervisors failed to properly investigate and address allegations of discrimination, retaliation and/or harassment;

   c.   Inadequate training/supervision was so likely to result in the discrimination, retaliation, and/or harassment that policy makers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision;

   d.   Policy makers engaged in and/or tacitly condoned the discrimination and/or retaliation.

215.    The individual Defendants unlawfully participated in and/or permitted the unlawful conduct to perpetuate, without abatement, in violation of Plaintiff's Constitutional and/or statutory rights pursuant to 42 U.SC. 1983.

## SECOND CAUSE OF ACTION (AGAINST ALL DEFENDANTS)

216.    Plaintiff JESSICA COHEN repeats and realleges the prior paragraphs of this complaint as if the same were fully set forth at length herein.

217.    Defendants took the aforementioned acts of discrimination based on Plaintiff's sex, age and/or gender. As such, Defendants are in violation of 42 U.S.C. 1983, 20 U.S.C. 1681 et

seq, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.

218.   Plaintiff is a Causation female who was employed by the Defendant SUFFOLK COUNTY.

219.   While acting under color of state law, Defendants deprived Plaintiff of her constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983, and all related provisions of the New York State Constitution. Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

      a.   Defendants' custom or practice of discriminating and/or retaliating against Plaintiff based on her race and/or gender and/or age. Defendant subjected Plaintiff to different criteria for investigating and/or addressing complaint's of discrimination and/or harassment than other non-female and/or non-Caucasian employees. The discriminatory and/or retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policy makers;

      b.   Supervisors failed to properly investigate and address allegations of discrimination, retaliation and/or harassment;

      c.   Inadequate training/supervision was so likely to result in the discrimination, retaliation, and/or harassment that policy makers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision;

      d.   Policy makers engaged in and/or tacitly condoned the discrimination and/or retaliation.

220.   The individual Defendants unlawfully participated in and/or permitted the unlawful conduct to perpetuate, without abatement, in violation of Plaintiff's Constitutional and/or statutory rights pursuant to 42 U.SC. 1983.

221.   As a proximate result of Defendants' actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation.

222.   As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

223.   The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

224.   By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff JESSICA COHEN, on the basis of gender, sex, race, age and/or national origin in violation of Title VII of the Civil Rights Act of 1964 as amended, codified at 42 U.S.C. Section 2000e et seq.

225.   Defendants' violation of these statutes is/was willful, intentional, and taken in utter disregard for Plaintiff JESSICA COHEN's rights under these statutes.

### THIRD CAUSE OF ACTION (AGAINST ALL DEFENDANTS)

226.   Plaintiff JESSICA COHEN repeats and realleges the prior paragraphs of this complaint as if the same were fully set forth at length herein.

227.   Plaintiff was/is an employee of SUFFOLK COUNTY.

228.   At the times referenced herein, Plaintiff filed a claim of discrimination and harassment directly with Defendants. Further, on January 20, 2016 Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") against the Defendant SUFFOLK COUNTY and Defendant AME, stating that the Defendants have intentionally treated her differently from other employees because of her gender, race, sex, and/or age.

229.    The filing of a discrimination complaint is protected activity within the meaning of Federal Law.

230.    The discriminatory and unlawful conduct perpetrated by defendants continued after Plaintiff filed her complaint of discrimination.

231.    Plaintiff reported this continued discriminatory conduct to Defendant SUFFOLK COUNTY and AME. Defendants failed to undertake any meaningful investigation relative to the actions complained of or to appropriately discipline those responsible.

232.    The actions complained of herein are part of a pattern and practice by defendants to discriminate and create a hostile work environment against female, and/or Causation, employees.

233.    Rather than following the procedures relating to the investigation and reporting of discrimination as set forth by Defendant's Policy, Defendant, continues to completely disregard and ignore Plaintiff's allegations without investigation and without following their own procedures.

234.    Moreover, after the report of harassment and/or discrimination, Defendants permitted the aforesaid harassment and/or discrimination to continue.

235.    The deliberate indifference of Defendants resulted in Plaintiff suffering retaliation and continued harassment and/or discrimination.

236.    As result of defendants' discriminatory actions and retaliatory actions, Plaintiff has suffered both emotional and pecuniary damages.

## FOURTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS)
### (Violation of Section 1983)

237.    Plaintiff JESSICA COHEN repeats and realleges the prior paragraphs of this complaint as if the same were fully set forth at length herein.

238.   Defendants, under color of statute, ordinance, regulation, custom, and usage, subjected JESSICA COHEN and caused JESSICA COHEN to be subjected to the deprivation of rights, privileges, and immunities as provided to them in the United States Constitution First, Fifth and Amendments, Title VII and other statutes and regulations.

239.   Upon information and belief, the refusal of the Defendants to take necessary and appropriate measures to investigate discrimination claims was part of a custom, practice or policy on the part of the Defendants.

240.   The custom, practice or policy of Defendants, SUFFOLK COUNTY and AME not to investigate claims of discrimination has resulted in the continuation of such discrimination and has resulted in a hostile environment.

241.   Upon information and belief, Defendant, SUFFOLK COUNTY and AME created, maintained, tolerated and/or allowed such hostile environment to exist and did nothing to rectify it.

242.   Defendants, SUFFOLK COUNTY and AME knew, or should have known, that JESSICA COHEN was subjected to harassment and/or discrimination at all times referenced herein until the present.

243.   Upon information and belief, Defendants, SUFFOLK COUNTY have a history of gender and/or sex and/or racial discriminatory behavior including, but not limited to, ignoring complaints, and creating, maintaining, allowing and tolerating an environment of harassment and/or discrimination.

244.   By reason of the foregoing, Plaintiff JESSICA COHEN has been and continues to suffer shame, humiliation, embarrassment and extreme emotional distress.

## FIFTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS)
### (Section 1988)

245.    Plaintiff JESSICA COHEN repeats and realleges the prior paragraphs of this complaint as if the same were fully set forth at length herein.

246.    42 U.C.S.C. §1988 provides, "In any action or proceeding to enforce a provision of 42 U.S.C.S. Section 1981-1983...the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee as part of the costs..."

247.    As a result of Defendants, SUFFOLK COUNTY and AME's deprivation of Plaintiff's rights under 42 U.S.C.S. Sections 1981-1983, Plaintiff seeks attorney's fees and costs.

## SIXTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS)
### Intentional Infliction of Emotional Distress

248.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

249.    Defendants, by the actions described herein exhibited extreme and outrageous conduct.

250.    In undertaking the aforementioned actions, Defendants, intended to cause Plaintiff severe emotional distress.

251.    The aforementioned conduct has caused Plaintiff severe emotional distress and mental anguish.

252.    As a proximate cause of Defendants' acts and omissions, Plaintiff has suffered and will suffer damages.

## DEMAND FOR TRIAL BY JURY

253.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

**Prayers for Relief:**

WHEREFORE, Plaintiff JESSICA COHEN prays for judgment against Defendants:

(a) Awarding Plaintiff JESSICA COHEN compensatory damages for future pecuniary losses and for emotional distress and other non-pecuniary losses in the sum of five million ($5,000,000.00) Dollars; and

(b) Awarding Plaintiff JESSICA COHEN litigation expenses and reasonable attorneys' fees and disbursements in accordance with 42 USC Section 12205; and

(c) Awarding Plaintiff JESSICA COHEN damages for economic losses and non-pecuniary losses in an amount which exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction over this action;

(d) Enter a judgment declaring Defendants' patterns, practices and omissions, as described above, in violation of the law;

(e) Directing the expungement of false reports regarding workplace violence from Plaintiff JESSICA COHEN's personnel file;

(f) Issue a permanent injunction barring Defendants, their agents, employees, officers and successors in interest, and those acting in concert with Defendants, from engaging in illegal and the unlawful customs, policies and practices described above;

(g) Directing that Defendants take such affirmative steps as are necessary to ensure the effects of these unlawful practices are eliminated;

(h) Enter a judgment and award in favor of Plaintiff for pre-judgment interest;

(i) Awarding Plaintiff JESSICA COHEN such other and further relief as may be just and proper.

Dated: Farmingdale, New York
      April 27, 2017

                                  GUERCIO & GUERCIO, LLP
                                  *Attorneys for Plaintiff*
                                  Office & P.O. Address
                                  77 Conklin Street
                                  Farmingdale, New York 11735
                                  (516) 694-3000

                          By:        _____S/_____
                                      Christopher F. Mestecky

TO:

SUFFOLK COUNTY
H. Lee Dennison Bldg.
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

SUFFOLK COUNTY
DEPARTMENT OF SOCIAL SERVICES
3085 Veterans Memorial Highway
Ronkonkoma, New York 11779

JOHN O'NEILL, Commissioner
3085 Veterans Memorial Highway
Ronkonkoma, New York 11779

SUFFOLK ASSOCIATION OF
MUNICIPAL EMPLOYEES
30 Orville Drive
Bohemia, New York 11716

KEVIN WILLIAMS
3085 Veterans Memorial Highway
Ronkonkoma, New York 11779

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Jessica Cohen<br>18 Summerfield Drive<br>Holtsville, NY 11742 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-01306 | Debra L. Richards,<br>Investigator | (212) 336-3768 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry,
District Director

JAN 27 2017

*(Date Mailed)*

Enclosures(s)

cc:

| Attn: Director of Human Resources<br>ASSOCIATION OR MUNICIPAL EMPLOYEES, INC.<br>30 Orvile Drive, Suite A<br>Bohemia, NY 11716 | Christopher Mestecky, Esq.<br>LAW OFFICES OF GUERCIO & CUERCIO, LLP<br>77 Conklin Street<br>Farmingdale, NY 11735 |
|---|---|

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Jessica Cohen**<br>**18 Summerfield Drive**<br>**Holtsville, NY 11742** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2016-01170** | **Debra L. Richards,**<br>**Investigator** | **(212) 336-3768** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

JAN 27 2017

*(Date Mailed)*

Enclosures(s)

| cc: | | |
|---|---|---|
| **Christine Malafi, Esq.**<br>**County Attorney**<br>**SUFFOLK COUNTY DEPARTMENT OF LAW**<br>**100 Veterans Memorial Highway, P.O. Box 6100**<br>**Hauppauge, NY 11788** | | **Daniela Giordano, Esq.**<br>**LAW OFFICES OF GUERCIO & GUERCIO, LLP**<br>**77 Conklin Street**<br>**Farmingdale, NY 11735** |