UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JESSICA COHEN,

                              Plaintiff,              **MEMORANDUM AND ORDER**

    -against-

SUFFOLK COUNTY and/or SUFFOLK         17-CV-2527 (SIL)
COUNTY DEPARTMENT OF SOCIAL
SERVICES, JOHN O'NEILL, in his official
capacity as Commissioner of the Suffolk
County Department of Social Services,
SUFFOLK COUNTY ASSOCIATION OF
MUNICIPAL EMPLOYEES, INC., and
KEVIN WILLIAMS, individually and in his
official capacity as Third Vice President of
Suffolk County Association of Municipal
Employees, Inc.,

                              Defendants.
----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this employment discrimination action is Defendants Suffolk County's (the "County") and John O'Neill's, in his official capacity as Commissioner of the Suffolk County Department of Social Services ("O'Neill," together the "County Defendants"), motion for reconsideration of the Court's decision on the County Defendant's motion for summary judgment. *See* Notice of Motion for Reconsideration ("County Defs'. Mot."), DE [71]; Memorandum of Law in Support of Motion for Reconsideration ("County Defs.' Mem."), DE [71-1]. By way of Complaint dated April 27, 2017, Plaintiff Jessica Cohen ("Cohen" or "Plaintiff") commenced this action against the County, O'Neill, Suffolk County Association of Municipal Employees, Inc. ("AME" or the "Union"), and Kevin Williams ("Williams," together

1

the "Union Defendants," collectively "Defendants") alleging violations of: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") for gender and/or race discrimination, a hostile work environment based on gender and/or race, and retaliation; (ii) the Age Discrimination and Employment Act ("ADEA"); (iii) 42 U.S.C. § 1983 ("Section 1983") for deprivation of her rights under the Fourth, Fifth and Fourteenth Amendments; (iv) 42 U.S.C. §§ 1981 and 1988; and (v) 20 U.S.C. § 1681. *See generally* Complaint ("Compl."), Docket Entry ("DE") [1].

The County Defendants and Union Defendants each filed motions for summary judgment, and the Court: (i) denied the Defendants' Motions on statute of limitations grounds as to Plaintiff's Title VII claims; (ii) granted the County Defendants' Motion as to Plaintiff's Title VII gender and race discrimination, hostile environment based on race, and retaliation claims, as well as Section 1983 claims; (iii) denied the County Defendants' Motion as to Plaintiff's hostile work environment claim based on gender; and (iv) granted the rest of the Union Defendants' Motion in its entirety. *See* DE [68] ("2022 M&O"). The County and O'Neill now move for reconsideration of summary judgment on Plaintiff's remaining gender-based hostile work environment claim. *See* County Defs.' Mot. For the reasons set forth below, the Court denies the County Defendants' Motion.

I. BACKGROUND

A. Relevant Facts

The Court summarizes facts relevant only to the instant motion and are taken from the Memorandum and Order on the Defendants' motions for summary judgment. *See* 2022 M&O. Except where indicated, these facts are undisputed.

2

1. <u>The Parties</u>

Cohen is a white female who since 2003 has been employed by the County as a Social Services Examiner. 2022 M&O at 3. Plaintiff received various promotions while working for the County, and in 2014, she received the title of Social Services Examiner IV and was transferred to the Chronic Care Unit in the Mary Gordon Building where she held the position of Assistant Center Manager. *Id*. In this position from 2014 to 2016, Cohen supervised approximately 80 employees. *Id*. In addition, at all relevant times to this action, Plaintiff was a member of AME, the Union which represents Suffolk County employees. *Id*.

Defendant Williams is an African-American male employed by Suffolk County since 2002, and held the position of Social Services Examiner II at all relevant times. *Id*. He was also a member of the Union, held the title of AME's Third Vice President, and served as a Union representative from 2012 to 2015. *Id*. Williams was not an employee of AME, but he received a $600 monthly stipend for expenses as Third Vice President. *Id*. at 3. Williams was not assigned to work in the Mary Gordon Building, but he provided Union representation to employees of Suffolk County, including those employees under Plaintiff's supervision. *Id*. at 4. Williams did not at any point hold a supervisory position over Cohen. *Id*.

Defendant AME provides Union representation to employees of Defendant Suffolk County, including Cohen and Williams. *Id*. The Union's responsibilities during the relevant time period were governed by a collective bargaining agreement between AME and the County. *Id*.

3

Defendant Suffolk County is a municipality as well as Cohen's and Williams's employer. *Id*. The County's Office of Labor Relations is responsible for investigations of workplace violence complaints rather than individual County departments. *Id*.

Defendant O'Neill was the Commissioner of Social Services from November 2013 to November 2018. *Id*. O'Neill oversaw the department, received complaints from Cohen, Williams and other County employees, and would occasionally meet with managers of the various units to discuss processes and changes from a managerial perspective. *Id*.

2. November 7, 2014 Incident

On November 7, 2014, Cohen attended a meeting in Great River Building with County employee Amy Siefert ("Siefert"), Plaintiff's subordinate, regarding Siefert's productivity. *Id*. Seifert requested to have Union representation at the meeting, and Cohen claims that she confirmed with her supervisor, Kathleen Fitzgerald ("Fitzgerald"), that representation was not required and denied Seifert's request. *Id*. Williams was informed that Seifert was denied Union representation, and although AME representatives were not allowed in the building unless they had official Union business, Williams arrived at the Great River Building after the meeting occurred and Plaintiff had left. *Id.* When looking for Cohen in the building, he yelled in the presence of Suffolk County employees, "where is that bitch?" "where the fuck is she?" and "fucking bitch, bitch" referring to Plaintiff although not specifically stating her name. *Id*. Williams stayed for about 15 to 20 minutes before he was asked to leave by County employee Joe Alesco ("Alesco"), and approximately 25 to 30 individuals

4

were present during this incident. *Id*. Several employees notified Defendant O'Neill saying that Williams yelled "fucking bitch, bitch" in front of other employees causing a disturbance. *Id*. Later that day, Cohen's subordinates Linda Brown ("Brown") and Sean Hill ("Hill") notified her of the incident, and Brown also reported it to Fitzgerald, who informed her supervisor, the Division Administrator Kimberly Staab ("Staab"), and the Assistant Commissioner of Suffolk County Department of Social Services Traci Barnes ("Barnes"). *Id*. at 5-6.

On November 12, 2014, Williams sent O'Neill an email regarding Union representation in the Chronic Care Unit asserting that an employee should be entitled to Union representation if a meeting could lead to discipline, and denial of representation was a form of "harassment." *Id*. at 6 O'Neill met with Staab and Fitzgerald regarding this correspondence, and after they explained that what Williams reported was untrue because the November 7, 2014 meeting that occurred with Plaintiff's subordinate was a not a form of discipline, O'Neill found Williams's report not credible. *Id*.

### 3. February 10, 2015 Incident

The next incident between Cohen and Williams occurred on February 10, 2015 in the Mary Gordon Building during a performance review of County employee Ruth Silhan ("Silhan"). *Id*. Present at the meeting were Plaintiff, Fitzgerald, Silhan, Hill, Williams and a second Union representative Joan Vaccaro ("Vaccaro"). *Id*. Vaccaro was also an employee of Suffolk County as a Social Servicer Examiner I, held various leadership positions at AME, and served as the Unit President for Medicaid. *Id*.

5

During the meeting, Williams stood up, began yelling, pounded his fists on the table and brought up matters that pertained to Plaintiff. *Id.* This lasted for the duration of the meeting, which was about a half hour. *Id.* at 6-7. Although Williams never physically threatened Cohen, she felt intimidated by the event. *Id.* at 7. After the evaluation portion of the meeting ended, and with Fitzgerald and Vaccaro present, Plaintiff confronted Williams regarding the November 7, 2014 incident. *Id.* The parties dispute whether Williams admitted to referring to Cohen as a "bitch," although he later stated that any denial was untrue, and Plaintiff said she did not appreciate him trying to humiliate, demean and insult her. *Id.* Cohen told Williams that she obtained statements against him, and he believed Plaintiff was pursuing a grievance against him. *Id.* A formal grievance is known as a "workplace violence complaint" under County policy. *Id.*

The parties dispute what else was said during this confrontation. *Id.* Cohen claims that she said words to the effect of "why are you after me . . . why do you always go after me," and that Williams responded "yes," meaning that he was biased against her. *Id.* Williams claims that he told Plaintiff that he "did not hate her" and that he would "represent her as he would with any other union member" if she filed a grievance. *Id.*

At the conclusion of the meeting, Williams stood, grabbed Fitzgerald's hand and kissed it, and then grabbed Cohen's hand and kissed it, which Fitzgerald and Vaccaro witnessed. *Id.* Cohen did not give verbal permission or consent to kiss her hand. *Id.* The parties dispute Williams's intentions for kissing Cohen's and

6

Fitzgerald's hands at the meeting. *Id.* Fitzgerald, as Cohen's supervisor, claimed she reported this incident to "administration" although she is unaware of any action taken in response by the County. *Id.* at 7-8. Cohen did not have further contact with Williams until over two months after this meeting. *Id.* at 8.

4. February, March and April 2015 Emails and Related Complaints

On February 5, 2015, Williams emailed O'Neill concerning Union representation in the Chronic Care Unit, and he forwarded it to Jennifer McNamara ("McNamara"), the Director of the Office of Labor Relations because, as set forth above, Labor Relations handles workplace complaints for review and action if appropriate. *Id.* O'Neill subsequently met with Staab, Fitzgerald and Barnes regarding this correspondence from Williams and related complaints from County employees. *Id.* These complaints alleged that Fitzgerald and Cohen were tracking employee productivity in an unfair and "harassing" manner, and according to Plaintiff, Suffolk County Security Officer, Kevin Wilson ("Wilson") was assigned to investigate these complaints. *Id.* Wilson interviewed approximately 19 employees in the Chronic Care Unit as well as Fitzgerald and Vaccaro in March 2015, and ultimately found the complaints unsubstantiated. *Id.*

After the February 10, 2015 incident, Vaccaro provided Williams and other employees with information about filing workplace violence complaints. *Id.* The parties dispute whether Vaccaro, who was present at the February 10 incident, had knowledge that Williams requested or encouraged employees to file complaints against Cohen and/or whether Vaccaro herself encouraged or coached employees on

7

filing workplace grievances against Cohen. *Id*. at 8-9. Plaintiff alleges that she overheard Vaccaro doing so, and that Fitzgerald claimed that the complaints filed against Plaintiff were "the result of a witch hunt" by Vaccaro. *Id*. at 9. The parties do not dispute that Williams wanted the Chronic Care Unit's practice of supervisors holding certain meetings without Union representation investigated. *Id*.

On March 2, 2015, Vaccaro contacted Silhan regarding Plaintiff and forwarded an email from Silhan to Williams, who then forwarded the email to McNamara, the Director of Labor Relations, hoping for an investigation to transpire into Cohen's unit. *Id*. Williams then sent McNamara another email and copied O'Neill requesting an investigation in the Chronic Care Unit regarding Union representation and employee complaints. *Id*. O'Neill had a separate conversation with Vaccaro regarding the employee complaints, and in response, O'Neill met with the managers in the Chronic Care Unit to address the situation. *Id*.

Plaintiff claims she made contemporaneous verbal complaints regarding Williams and the above-referenced incidents to her supervisors, Fitzgerald and Staab, either during or shortly thereafter and to Commissioner O'Neill, although Cohen does not provide specific dates. *Id*. In March 2015, Plaintiff requested a meeting with her supervisors to discuss the ongoing issues she had been having with Williams and Vaccaro. *Id*. Cohen also requested the workplace violence complaint forms from Wilson who investigated the earlier employee complaints. *Id*. On April 7, 2015, Cohen emailed AME members and the Union attorney inquiring into the procedure to submit a complaint against Williams with the Union. *Id*. at 10.

8

### 5. April 9, 2015 Incident

On April, 9, 2015, Williams attended a meeting in the Mary Gordon Building at the request of County employee Siefert, Plaintiff's subordinate, concerning her performance evaluation that Cohen was conducting. *Id.* Vaccaro attempted to attend the meeting with Williams, but she was not allowed because only one Union representative could be present. *Id.* When the meeting began, Williams videotaped Plaintiff using a device attached to his lapel that looked like a camera. *Id.* Upon noticing the device, Cohen asked Williams to remove it and left to inform her supervisor, Fitzgerald, about the attempted recording and that she felt uncomfortable. *Id.* Fitzgerald contacted her own supervisor and the Assistant Commissioner to clarify whether Williams was permitted to record the meeting. *Id.* The Commissioner's Office advised that he was not. *Id.*

Cohen returned and informed Williams that he could not record Siefert's evaluation. *Id.* Williams became angry and yelled, walked out of the room, and began pacing in front of other employees. *Id.* He stated that he was calling his lawyer, and after he did, his lawyer asked him to remove the camera. *Id.* When Williams came back to the room, he removed the recording device from his lapel, but he took out his cellphone and placed it on the desk to record the meeting. *Id.* at 10-11. Cohen again told Williams that he could not use a recording device, and he eventually removed the phone from his desk and the meeting continued, which lasted about a half-hour. *Id.* at 11. Cohen felt that Williams's attempt to record the meeting was either discrimination or harassment towards her. *Id.*

9

### 6. Subsequent Workplace Complaints, Investigations and Events

On or around April 22, 2015, four County employees—Amy Seifert, Ruth Silhan, Melissa Sorenson and Tracy Randall—filed workplace violence complaints against Cohen although Plaintiff claims that she knew these employees were filing complaints around March 2015. *Id*. McNamara assigned Ed Moltzen ("Moltzen"), an assistant to the Suffolk County Executive as the investigator for the Office of Labor Relations to handle these four complaints. *Id*. The allegations against Cohen were that employees were "being threatened by management that if they did not meet the monthly quota for cases [then] they would be written up and have time off denied." *Id*. Plaintiff claims that these allegations were essentially the same as prior complaints that were investigated by Wilson in March 2015 and had already been determined unsubstantiated. *Id*. Moltzen's investigation into the four complaints occurred in June 2015, and after it was complete, only Silhan's grievance was found substantiated against Cohen, and Moltzen determined that Plaintiff had violated County policy. *Id*. Cohen alleges that during her interview with Moltzen, she was not provided Union representation or information about the allegations asserted against her. *Id*. As a result of the substantiated finding, McNamara recommended to O'Neill that thought be given to transferring Plaintiff to a different unit and that she receives written counseling. *Id.* at 12. On or about August 28, 2015, Cohen met with O'Neill regarding the findings, and he issued Plaintiff a verbal counseling reprimand, which was placed in Cohen's personnel file and removed after six months. *Id*.

On April 22, 2015, Cohen filed a workplace violence complaint against Defendant Williams. *Id.* Alexandra Gordon ("Gordon") was assigned by the County to investigate the complaint, which included the three incidents outlined above. *Id.* O'Neill was also aware of this complaint. *Id.* Gordon's training in workplace investigations included a three-to-four-hour course on County policies and processes regarding workplace violence and prevention, and this was her first investigation for the County. *Id.* Gordon interviewed Plaintiff and Fitzgerald on June 4, 2015 regarding the three incidents concerning Williams. *Id.* She found both credible. *Id.* Gordon also interviewed Brown, Hill and Alesco regarding the November 7, 2014 incident, and Staab was interviewed regarding all three incidents. *Id.* Gordon interviewed Williams as well. *Id.* Based on these interviews, Gordon determined that the three incidents had occurred, but because there were "different stories," Cohen's complaint was unsubstantiated. *Id.* The report was finalized on June 13, 2015. *Id.* O'Neill learned that the complaint was determined unsubstantiated around late August or early September 2015. *Id.*

Cohen was transferred to Medicaid Administration on or about September 2016. *Id.* at 13. Prior to her transfer, she had a meeting with Staab and Fitzgerald to discuss issues she continued to experience working in the Chronic Care Unit, and her supervisor suggested she could be transferred, and that it would be "good for Plaintiff." *Id.* Cohen did not request to be transferred to Medicaid Administration, and although she remained at the same level as a Social Services Examiner IV, her

11

position and job duties were different, including removal of all supervisory responsibilities. *Id*.

### B. Procedural History

Based on the above, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on January 20, 2016. Compl. ¶ 5. The EEOC issued its Right to Sue Letter on January 27, 2017. *Id.* ¶ 6. Cohen then commenced this action against Defendants by Complaint dated April 27, 2017 alleging violations of Title VII, the ADEA, Section 1983 for deprivation of her First, Fifth and Fourteenth Amendment rights, 42 U.S.C. §§ 1981 and 1988, 20 U.S.C. § 1681, and a pendent state law claim for intentional infliction of emotional distress. *See generally* Compl.

Defendants moved to dismiss, which then District Judge Joseph F. Bianco granted in part and denied in part, dismissing the following claims: (i) Title VII against any individual defendants; (ii) 20 U.S.C. § 1681; (iii) Section 1983 and the Fifth Amendment; (iv) the ADEA; (v) 42 U.S.C. § 1981; (vi) all causes of action against the Department of Social Services; and (vii) attorney's fees under 42 U.S.C. § 1988. *See generally* DE [26]. Cohen voluntarily dismissed her intentional infliction of emotional distress claim leaving alleged violations of Title VII against the County and AME, and Section 1983 for deprivation of her First and Fourteenth Amendment rights against all Defendants. *Id*. More specifically, Plaintiff alleged: (1) Title VII violations against the County and the Union for gender and race discrimination, a hostile work environment based on gender and race, and retaliation; and (2) Section 1983 claims against all Defendants for violation of her rights to equal protection and

12

free speech because O'Neill failed to stop the alleged harassment creating a discriminatory policy, and failed to train employees investigating workplace complaints. *See* Compl. ¶¶ 1, 237-44; DE [67-115], ("Pl. SJ Opp.") at 29, 32.

This Court oversaw discovery, and the parties consented to its jurisdiction for all purposes on January 22, 2020. *See* DE [54]. After discovery closed, Defendants filed their respective motions for summary judgment on March 19, 2021, and Plaintiff opposed both motions. *See* DEs [67-28] ("County Defs.' SJ Mem."), [67-44], [67-118], [67-120] ("County Defs.' SJ Reply"); Pl. SJ Opp. The Court: (i) denied the Defendants' Motions on statute of limitations grounds as to Plaintiff's Title VII claims; (ii) granted the County Defendants' Motion as to Plaintiff's Title VII gender and race discrimination, hostile environment based on race, and retaliation claims, as well as Section 1983 claims; (iii) denied the County Defendants' Motion as to Plaintiff's hostile work environment claim based on gender; and (iv) granted the rest of the Union Defendants' Motion in its entirety. *See* 2022 M&O. More specifically, the Court found that continuing violation doctrine applied, so the alleged Title VII violations prior to the 300-day period for filing claims with the EEOC were not time-barred, *see id.* at 17-20, and that based on the evidence presented, a reasonable jury could conclude that the terms of Cohen's employment were sufficiently hostile to alter the conditions of her work environment based on her gender. *Id.* 25-29. This left Cohen's gender-based hostile work environment claim against the County and O'Neill ready for trial, and all other claims were dismissed.

On April 14, 2022, the County Defendants filed their motion for reconsideration of the Court's decision, seeking dismissal of Plaintiff's gender-based hostile work environment claim. *See* County Defs.' Mem. Cohen opposes. *See* Pl. Opp. For the reasons set forth below, the Court denies the County Defendant's Motion.

## II.  LEGAL STANDARD

The decision to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." *Wilder v. News Corp.*, No. 11-cv-4947, 2016 WL 5231819, at *3 (S.D.N.Y. Sep. 21, 2016) (internal quotation marks and citation omitted). Courts in the Second Circuit will grant motions for reconsideration only where: (1) there has been a change in the law; (2) new evidence is available; or (3) there is a "need to correct a clear error or prevent manifest injustice." *Frey v. Bekins Van Lines, Inc.*, No. 09-cv-5430, 2012 WL 2701642, at *1 (E.D.N.Y. Jul. 5, 2012) (citing *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "Reconsideration is generally denied 'unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (alteration omitted)). A motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015) (internal quotation and citations omitted).

Upon moving for reconsideration, a party may, however, introduce new relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortg. Co.*, 2007 WL 140956, at *6 (E.D.N.Y. Jan. 22, 2007). Moreover, reconsideration may be appropriate if a court "misinterpreted or misapplied" relevant case law in its original decision. *Village Green At Sayville, LLC v. Town of Islip*, No. 217CV7391DRHARL, 2021 WL 230298, at *6 (E.D.N.Y. Jan. 22, 2021); *Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) ("district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice."). Nevertheless, Courts will not grant motions for reconsideration where litigants are simply attempting to "reargue their previous positions or present new or alternative theories that they [previously] failed to set forth[.]" *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013); *see also Wall v. Construction & Gen. Laborers' Union*, No. 06-cv-1264, 2009 WL 230122, at *1 (2d Cir. Feb. 2, 2009) (Summary Order) (affirming denial of motion for reconsideration because the "motion simply reiterated earlier arguments and did not point to any new law or fact that created an exceptional circumstance mandating reconsideration").

## III. DISCUSSION

The County Defendants argue that the Court overlooked controlling law and underlying facts in reaching its conclusion, and that the continuing violation doctrine does not apply because: (i) the only timely alleged discriminatory act is unrelated to Plaintiff's gender, so compelling circumstances do not exist warranting the doctrine's

application, and (ii) that Williams's alleged discriminatory conduct cannot be imputed to the County. County Defs.' Mem. at 4-7. Further, they argue that should the Court reconsider and determine that the continuing violation doctrine does not apply, the hostile work environment claim cannot survive based on the timely alleged discriminatory conduct. *Id.* at 8-10. For the reasons set forth below, these arguments fail, and the Court denies the County Defendants' Motion.

In New York, a plaintiff asserting claims under Title VII must file a charge with the EEOC within 300 days from the date of any act of discrimination or retaliation. *See Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 435 (S.D.N.Y. 2008) ("Under Title VII, the statute of limitations for filing a charge of discrimination in states such as New York that have an agency with the authority to address charges of discriminatory employment practices is 300 days."). Generally, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002); *see Liss v. Nassau Cty.*, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006) ("each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice, and . . . starts a new clock for filing charges . . . .") (internal quotation and citation omitted).

Notwithstanding this rule, under the continuing violation doctrine, an individual "can recover for . . . conduct [outside the 300-day period] if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period." *Liss*, 425 F. Supp. 2d at 340 (citing *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir.

16

1999)); *see Branch v. Guilderland Cent. Sch. Dist.*, 239 F. Supp. 2d 242, 253 (N.D.N.Y. 2003) ("the continuing violations doctrine . . . allows a plaintiff 'to bring suit challenging all conduct that was part of a continuing violation, even conduct that occurred outside the limitations period.'") (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (internal brackets omitted)). This doctrine, however, does not apply to "discrete acts of discrimination, even if they are related to acts alleged in timely filed charges." *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013). Such conduct, "which fall[s] outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).

In the hostile work environment context, "[t]he Second Circuit has recognized the application of the continuing violation doctrine in cases where plaintiffs could provide proof of specific or ongoing policies or practices of discrimination that caused their environment-based injuries." *Plant v. Deutsche Bank Sec., Inc.*, No. 07-cv-3498, 2007 WL 2187109, at *3 (S.D.N.Y. July 23, 2007); *see Germany v. N.Y.S. D.O.C.S.*, No. 03-cv-148, 2003 WL 22203724, at *5 (S.D.N.Y. Sep. 22, 2003) ("a hostile work environment continues over time, and is created and evidenced by a series of separate acts that collectively constitute one unlawful employment practice . . . . [T]he statute of limitations for filing a hostile work environment charge with the EEOC is more flexible . . . ."). These claims may be based on events outside the statute of limitations period as long as: (1) the acts occurring before the cutoff constitute part of the same

17

actionable hostile work environment practice, and (2) at least one act contributing to the claim falls within the filing period. *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016).

Applying these principles, the County Defendants fail to meet the standard for reconsideration on Plaintiff's remaining gender-based hostile work environment claim. Initially, the County Defendants argue that the Court misapplied relevant case law and overlooked the underlying facts in that the alleged discriminatory incidents are discrete acts, so the continuing violation doctrine does not apply. County Defs.' Mem. at 3-6. More specifically, they argue that the only timely alleged incident on April 9, 2015 does not relate to Cohen's gender and is, therefore, unrelated to the other untimely events. *Id.* at 4-5. This is the same argument County Defendants advanced in their summary judgment motion papers, *see* County Defs.' SJ Mem. at 8-10; County Defs.' SJ Reply at 2-4, and they fail to put forth a clear error or misapplication of relevant case law. The Court determined that the three incidents involving Williams, as well as the multiple alleged retaliatory workplace violence complaints and investigations, all of which Cohen's supervisors and O'Neill were aware of and/or witnessed, may be considered part of a single discriminatory policy or practice that created a gender-based hostile work environment. 2022 M&O at 19-20. Moreover, several of the workplace violence complaints were filed on April 22, 2015, which is within the 300-day limitations period. The parties do not dispute that Williams hoped for an investigation to take place in Cohen's unit, and an issue of material fact exists as to whether he encouraged employees to file these workplace

18

violence complaints. *See* 2022 M&O at 9, 28-29. Further, the County Defendants fail to present new authority on the continuing violation doctrine that warrants a different outcome, or additional evidence not considered. Accordingly, the motion is denied as to this issue.

Next, the County Defendants argue that Williams acted solely in his capacity as a Union Representative on behalf of AME, so his actions cannot be imputed to the County. County Defs.' Mem. at 6-7. Again, this is the same argument County Defendants put forth in their summary judgment motion. *See* County Defs.' SJ Mem. at 14-15; County Defs.' SJ Reply at 3-5. Moreover, they again fail to present new case law or additional evidence not considered. The Court noted in its earlier Memorandum and Order that "Williams was not Cohen's supervisor, and was acting as a Union representative during the alleged incidents," but still determined that because "O'Neill, the Office of Labor Relations, and Plaintiff's supervisors were aware of the harassing incidents as well as the retaliatory workplace violence complaints against Cohen[,] . . . Plaintiff raises an issue of material fact as to whether the County's actions in addressing her claims were effectively remedial and prompt . . . ." M&O at 29. The issue is not imputation of Williams's conduct as County Defendants argue. *See* County Defs.' Mem. at 6-7. Rather, it is whether the employer's actions in attempts to investigate and/or remedy the allegedly hostile work environment were sufficient—an issue of material fact. Again, because Defendants fail to present new authority or overlooked evidence, or establish that the Court should correct a "clear error of law or prevent manifest injustice," *see Munafo*

19

*v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004), their motion is denied as to this issue.

Finally, the County Defendants argue that should the Court find after reconsideration that continuing violation doctrine not apply, the timely alleged discriminatory conduct does not amount to a hostile work environment. County Defs.' Mem. at 8-10. The Court need not reach this issue because it rejects the arguments above, and as stated in its original Memorandum and Order, Plaintiff has established that an issue of material fact exists as to whether she was subject to an unlawful hostile work environment based on her gender, and whether the County Defendants' actions were reasonable in remedying those conditions. *See* 2022 M&O at 28-30. Accordingly, the Court denies the County Defendants' Motion in its entirety.

## IV.   CONCLUSION

For the reasons set forth above, the Court denies County Defendants' Motion for Reconsideration of the Court's Order on their Motion for Summary Judgment.

**SO ORDERED.**

Dated:   Central Islip, New York
        February 27, 2023      /s/ Steven I. Locke
                                          STEVEN I. LOCKE
                                          United States Magistrate Judge